case number 21-3064 united states of america versus antonio malachi bryant appellant miss roland for the appellant miss gulu for the appellate morning miss roland we'll hear from you good morning sanford roland on behalf of antonio bryant when you know that you are the target of police action because they've made a brisk feline to you and you alone because they've questioned you and you alone about a gun the additional knowledge that you have been deliberately surrounded not by happenstance not accidentally but deliberately makes it perfectly clear that you won't be allowed to walk away there was no reason for officer smith to go around the back of the suv except to surround mr bryant and to communicate to him that he would not be allowed to leave he testified that that was the very point of doing that that it was a tactic and that it was a tactic that they use to prevent people or give people the impression that they are not allowed to leave did he say that or did he say he did it in case he ran to keep him from running i thought he did it to keep him he didn't testify that it was in case of running but he said he testified that he did it he said i don't want him to run so i don't want him to run is the equivalent of i don't want him to leave whether it's running or walking away you you can't simply surround people communicate to them that they can't run without also communicating to them that they can't walk away so it's really it's the same here they didn't want him to run they didn't want him to leave and he didn't because he understood what it meant when they targeted him and then surrounded him well so far where is the unconstitutional police conduct the unconstitutional police conduct is in making a show of authority to which mr bryant submitted without reasonable particularized suspicion that he understand that counsel but the facts that you were discussing both before and during the question by judge conduct the unconstitutional conduct is surrounding him on both sides basically blocking his or partially blocking his two avenues of egress thereby clear that's what i want to understand is it your position that under terry a police officer cannot approach me from the front and the back it's not our position that a police officer cannot do that but if they do do that that is a show of authority and that's okay if they have reasonable suspicion but if they don't it's a violation of the person's fourth amendment rights no i understand that i'm sorry i'm not getting what you well i see a police officer coming in front of me and heading toward me and i've just seen another officer behind me well i think that any reasonable person who sees officers coming toward him at a brisk pace coming toward him alone where one comes in front of him and the other one detours out of his way to come behind him and then ask him whether he has a gun so letting him know he is targeted and a very serious matter that no reasonable person would think they could just say excuse me officer and glide past so so if i'm walking down the sidewalk or if a person is walking down the sidewalk and a police officer is walking towards them on the sidewalk it would be they unreasonable for them to feel like they could just walk past the police officer on the sidewalk well we don't have that circumstance because i'm not asking this case i'm just saying in general in general the citizen they see a police officer walking towards them on the sidewalk should feel like they cannot walk past the police officer no that is not what we're arguing and that would be the natural course of and okay so that's what i'm trying to get at what are you arguing if it's not what judge wilkins just asked you it is not a violation of the fourth amendment for a police officer to approach any person and if they happen to be coming toward that person it's perfectly natural that you know they would direct their question to that person in front of them but when you make a detour to go around so you can surround the person so they can't go forward and they can't go backwards without encountering you well the difference is very different found that there was eight to ten feet i mean i'm suggesting by my question i think that you're arguing a more difficult case than you need to but is it clear that you're indicating the seizure is when you have officer is it benitez benitez yes benitez at least how it presents on the video body cam that mr bryant can see officer benitez on his right then officer smith is going around the car and then he's on mr bryant's left there's a vehicle which is the white sud in front of mr bryant the gate behind him and then yes there's trash cans but mr bryant didn't in effect close himself in if he walked either way he would go to an officer so the officer's intention at least looks or appears to be that he's surrounded and then that's your seizure yes um defense counsel below identified the seizure at the moment that he was surrounded right but also later at the moment that he was surrounded and questioned so at either of those points and we've argued in our brief that it was at the moment that he's uh rounded the corner and questioned mr bryant um so we don't need it to be any earlier so i think the challenge that i'm having with your position just to be candid and cut the brass tacks here because i want you to give me your best answer is that i think that the district court found that officer smith rounded the suv at 19 hours 40 minutes in zero seconds and that's what the body camera footage appears to show in that officer smith asks the question what's that bulge three seconds later at 19 hours 40 minutes in three seconds in that officer smith before in that three second interim is also raising i think it's his left hand and pointing towards bryant's waistband indicating that he sees something there and obviously he would have seen something before he verbalizes the question what is that bulge there so the district court finds that somewhere between the zero second mark and the three second mark smith sees a bulge that's also basically pretty much concurrent when smith is stepping up onto the sidewalk and when the seizure happens so if we were to find that upon seeing the bulge there's reasonable articulable suspicion then the government says you lose and the district court says that's why you you lose your motion so what's wrong with that way of looking at this case if the court is kind of identifying the short time period as you know problematic for my argument i disagree with that and human perception is lightning fast and when when he rounded the corner or even when mr bright could see him coming around he was he was seized then he was seized the minute he came around the corner and then he spoke and he didn't say right away what's that bulge he didn't see a bulge he asked a couple of questions before do you have a gun and uh did you step off did you walk away from the police so at that moment even if it's one second away from the moment when the officer proceeds the guy thinks he sees a bulge that isn't really relevant these things happen very quickly in the days before body-worn cameras it all seemed like it took minutes but now that we have body-worn camera we know that it doesn't but in your position we need to find a seizure right when officer smith comes around and then the rest flows and speaks the words you don't have any guns do you yeah so the so the movement of the officer and the question right so that is the moment of seizure and what argument is that looking at the totality of circumstances you have two officers moving briskly toward one person passing by others and they're closing in on him and the district court was focusing as i read the record on the fact that among other things the officers were in the time scenario that judge wilkins just surveyed with you things were moving quickly and the supreme court has often emphasized the need for the police to move quickly and the government i assume will focus on the fact well it was eight to ten feet between the two officers and it's judge wilkins focus on the fact that everything was moving so quickly that at the point the officer asked do you have any guns on you and the defendant says no and at that point he sees yes at that point he sees um mr bryant did nothing to put any time pressure on this that was all about the police conduct it took them 23 seconds to get out of the car and get to him um the fact that they were moving that fast the fact that they decided to front is all police conduct it has nothing to do with what mr bryant has done and it creates the impression in any reasonable person i think that they would not be permitted to just avoid all of this and leave um i so just so that i'm clear i think that the defense council below said the seizure occurred once officer smith blocked egress on the sidewalk i'm sorry what when officer smith blocked arguably egress on the sidewalk are you arguing now that seizure occurred prior to that moment no i'm arguing that as the defense council did below when officer smith rounded that corner and said you don't have any guns to you that was the moment of seizure that was the moment that he knew he was targeted in a very serious investigation and that he was surrounded the way the only way well i won't say that the the way that the district court avoided concluding that he had been seen that there was a show of authority was by finding that he didn't know he was surrounded that he didn't know officer benedict was in front of him but the video evidence shows otherwise um particularly if you look at minute 39 uh 52 seconds up through 59 seconds you see that he did his his body his feet his face we're looking straight at officer benedict is so based on your argument that the district court clearly heard in that regard this court would owe no deference to the district court's legal conclusion that is correct the legal conclusion that there was no show of authority i really had to the legal question is de novo before us but that in resolving that we owe no deference as we are told to the historical finding by the district court because that was clearly erroneous yes that is correct that was a clearly erroneous finding and that really is the basis for the show of authority because he didn't understand that he had been surrounded but he did understand that see what i'm getting at is a hypothetical situation and i know my colleagues uh will respond but the police have a problem in this city high crime area lots of guns all the regulation of guns are being struck down as unconstitutional so what's a community to do so very much like the 60s they have this basic jump out methodology and it's been made more sophisticated by instructing the officers not to ask certain questions not to do certain things because then they will be violating the constitution and what i'm trying to understand in my own mind from your perspective if you're not going to focus on that clear error of law then the fact that i see exactly what brian saw means i am see he was seen i'm trying to think of a scenario where we're supposed to view the facts based on the evidence viewed most favorably to the government and so hypothetically you could see a scenario where the police do exactly what happened here and they get to brian and they say you know do you have any guns he says no he says well we're looking for this guy you know who had a gun uh and he was wearing the same kind of pants you're wearing do you know where that guy is and brian hypothetically might say he ran down that way and the officers go down that way so we don't have those facts here i understand that but i'm just trying to understand at what point there was an illegal seizure okay and you're saying the accusatory question you don't have any guns do you and brian says no and it's a fast-moving investigation and you can see how this is going to be argued that's what i'm why i'm trying to nail down clearly at what point the unconstitutional conduct occurs okay um well the court of course is looking at the totality of the circumstances the totality of the circumstances are that these uh officers double park their car in the driveway get out very quickly very quickly make a beeline to one person bypassing everyone else with friendly greetings then instead of doing what's natural which is both going to the person one officer takes a detour for the purpose for the obvious person obvious to any reasonable person of surrounding him a tactic designed to prevent people from leaving and then says communicates you are the target of a serious criminal investigation that moment is seizure given all of those circumstances i i think that this is a case where it's really helpful to try to you know do a little thought experiment imagine yourself in that circumstance if you saw the police coming towards you you know very quickly a beeline to you ignoring everybody else except to wave hello and then do something extraordinary to surround you to corral you and then ask you a question about a very serious matter a gun possession would you think you could say excuse me and slide on past i don't think any reasonable person would think that and the only i'm sorry so did officer smith at the moment that officer smith sees observes a bulge which the district court credits do you agree that he had reasonable articulable suspicion at that time i think that the um officer smith's testimony is you know quite shaky about what he saw and when he saw it but yes if he saw a bulge in his pants and it it looked like what officer smith has seen in the past to be a gun bulge then yes he has a reasonable articulable suspicion so so the district court finds this is at joint appendix 168 and officer smith steps onto the sidewalk at 1940 in zero seconds and then it's at 19 and then it's and then basically in the three seconds what happens are he says you don't got any guns on you do you brian says nah officer smith says stepped off doesn't really get a response to that and then immediately says what's that what's that bulge right there bro and then that is happening at 14 i'm sorry three seconds later so in the three seconds all of those things happen yes so your argument is that he was seized at 1940 and it's unconstitutional because at that moment he didn't have reasonable articulable suspicion he got it somewhere maybe two or three seconds later and so that violates the fourth amendment and we should suppress the gun exactly and that really is not an extraordinary proposition to say that one second you don't have reasonable suspicion in the next second you do i mean that's he's unconstitutionally for two seconds maybe three at the most it could have probably been one second because he could have seen the bulge at one second so he was seized unconstitutionally for one second so we suppressed the gun absolutely if he had not been seized he could have turned away and walked off and there would be no bulge to be seen what if he has to walk around the car to that side so that he can see his waistband because for your own safety you don't want to be you know to the back of someone who might have a gun in their waistband who can reach and grab it and turn around and shoot you so you have to for tactical purposes come around so that you can see the front of them and then also yeah if they start running you're in a position to grab it well there was someone in business of catching people not letting them run away from them right there was someone in front of them officer nitis who apparently did not perceive a bulge there's no testimony about that and you know which direction mr uh bryant might have gone forward backward we don't know because that didn't happen but the testimony he was that bryant was walking away from their direction and was kind of blading his body positioning the body in a way to also raise suspicions of the officers right um so so why wouldn't the officer want to walk around to the other side to get a better view these are life and death and officer wants to go home at the end of the shift just like you know you and i do right officer smith testified that the reason he went around was to communicate that mr bryant should not leave he didn't go around there he didn't explain any tactical reasons other than that like for safety or anything he had absolutely had the opportunity i mean that's your he says i didn't want him to run right that's out of glass that's his testimony yeah well i mean i can say i don't want you to leave that doesn't mean that i'm you know i love having this interchange with you that doesn't mean that i'm ordering you to to stay or you know you could say that you're not an armed and uniformed police officer if an armed and uniformed police two of them surround a person and say i don't want you to leave i think the court would interpret that as a seizure he didn't say any of that he's just saying in his mind and he communicated that he at what point did he tell bryant halt well he never said the words halt he surrounded him he asked questions and then he allegedly saw bulge and you know moved in to handcuff him but certainly the word halt is not required for a show of authority and in this court's cases and delaney and other cases it was never required that the police say halt you know what was required in delaney was that they partially blocked his ability to leave and they came around both sides of him there were other factors there's a top light but but basically that was it they didn't an officer's not suppression is not only required when an officer says you can't leave or halt let's talk about um earlier um there was comments about the government in their brief you're in the high crime area you're passing kipo it's night you're going in this particular street where you see you know observe some people and that they are indicating that mr bryant looks around here's the word 12 which is supposedly you know alert police by um pulls up his waist you know just all of those observations before the government comes up i just want to give you an opportunity to answer that because as i look listen to judge wilkins questions a little bit about what's wrong with an officer feeling safety and you know those that line of questioning um what would you say to that part that occurs before officer smith walks around okay thank you i'd like to address both mr bryant's conduct and the character of the neighborhood um so officer smith testified that he thought walking from one vehicle to the next when the police came up the driveway in an unmarked car looking over his shoulder in the direction of the officers in their unmarked car and touching his waist or his genital to be a security check he interpreted it as a security check and he interpreted all of those as suspicious because he had heard the word 12 and he and he says that directly at page 126 it was because someone had shouted 12 and he heard that that he interpreted everything mr bryant did which all of which were quite innocent as uh in response to the police and absolutely no evidence that mr bryant heard or understood the term 12th um and i refer this court to castle where the court said there has to be some evidence some direct evidence that the person knew of the police presence and it's not enough to say or it just sort of doesn't work to make a circular argument that well we know he knew it was a police presence because he did these things and these things are suspicious because he knew the policemen there has to be some evidence that he knew why isn't the fact that as somebody is saying 12 and the car is coming up he turns and walks away why isn't that circumstantial evidence that he knew that there was police and he wanted to you know avoid the police by walking away well trying to hide his presence behind the suv he didn't walk very far did he he walked very short distance from one car to another and at that moment in that apartment complex and you'll see in the videos there are people moving around and they are all moving around because the police they're not frozen until the police come up and the only way to conclude that those are suspicious actions is if he knew and he there's no evidence he didn't shout police they're in an unmarked car no one direct and there's just no evidence that he knows that that unmarked car is the police and that well they're in police uniform they are but they're also seated in the car and when you look at officer smith's testimony that his body on camera that he's wearing on his chest doesn't capture things beyond the dashboard well it also goes both ways looking into the car so i want to be clear um because your own brief at page 12 quotes officer smith as saying no brian answered the question whether he had guns on him saying no two seconds later sniff asked stepped off then what's that bold right there bro oh oh hold right there that's in quotes in your own brief yes all right so i thought and let's ignore for the moment the clear error about whether brian seen benitez i thought the district court was with you on the first phase when the officer was coming around the white suv and then because um she says you know the closer question is what was the situation when brian started asking questions and i thought that was maybe i misunderstood what judge wilkins was getting at earlier that given the shortness of time here all of this is almost simultaneous he's coming around the car say do you have any guns uh whole step off i didn't know what that meant at all um and then did you walk away um well i thought the testimony was brian indicated he didn't know what it meant either in any event this is all very quick this whole scenario is happening within seven seconds all right and just count seven seconds and how fast that is so trying to slice and dice each thing to stretch it out isn't portraying what the transcript shows and i thought that was the thrust of wilkins questions and you're resisting that i i'm not sure why but in any event i i guess my point is um however many seconds and it was i mean there was time for officer smith to get around the corner to say you don't have any guns do you and then say receive an answer and then say stepped off and those things do happen quickly but they don't happen simultaneously and the court has to is going to have to do this with these body worn cameras in every case right or at least quite frequently there's a moment between you know not perceiving and perceiving and in that moment where officer smith came around the corner and started asking him questions he had not perceived a bulge but there was plenty of time for mr bryant to perceive that he wasn't getting out of this he wasn't going to be able to walk away from this and you know in in that split second he could have said excuse me i'm leaving but for the fact that he understood that that was not going to be allowed um i think there might have been a second part to your question i'm not sure but if i could get back to judge child bring this to a conclusion unless one of my colleagues had well another question if i could answer the second part of judge child's question about the um character of the neighborhood you know of course mr officer smith never said it was a high crime neighborhood and if the police are going to diminish the constitutional rights of thousands tens of thousands maybe hundreds of thousands of people who live in the city in bad neighborhoods this court should require that they at least nail it down smith testified about the as either lincoln road or psa 708 i mean livingston road or psa 708 he never he did not testify about this quite large apartment complex he didn't particularize his testimony to where mr bryant was at all um he said that there was an open air drug market in the gas station that was not part of the complex was a distance away and was separated from the apartment complex by commercial buildings and shops um so so where where oh he didn't even give specific evidence about this um shot spotter he didn't say when shots were heard he didn't say where they were heard he didn't say if there is a shot spotter device in that apartment complex or was it over at the gas station was it somewhere else on lincoln road or in psa 708 his this this vague and insufficient evidence about the character of this apartment complex or or the place that mr bryant was really is insufficient to say that uh you know the suspicion and you know especially so because we already know from this court's cases that it's a contextual factor but it's a pretty weak factor and here with no particular evidence about this place it's really worthless any other questions uh which childs ditch rogers no we'll give you time to rebut thank you good morning miss good morning and please support and counsel on behalf of athletes united states uh your honors uh we are asking that this court affirm the district court's judgment in this case um the district court did not err in denying mr bryant's motion to suppress evidence um i think it's clear from the questions that have been asked so far this morning that the ultimate issue is when exactly mr bryant was seized um in this short you know six to seven minute time frame that that we have been focused on um and you know in the lead up to that time uh those few seconds we have focused on what happened but i also would like to point to the court uh point out to the court what did happen and what the district court noted in its in its findings in this case which was that this horseshoe was a well-populated area this was not very late at night this was a well-lit area the officers did not draw their weapons although the court found they were walking briskly the officers did not run which is a factor that this this court has pointed to in cases like the doctor did not physically separate mr bryant from the other individuals in the area they spoke to him in a conversational tone uh they asked that that initial question was not um the court found that it was a a firm tone but it wasn't it was a calm calmly asked question the officers were to see his waistband and so i think just from an atmospheric perspective there are some other factors that the court might take into consideration considering whether in the lead up to those six to seven seconds that we're concerned about um how much that contributes to whether there is so what is your answer to the point of the specific seizure yes um we think the court is the district court is correct that the seizure occurred um at the point that officer smith asked whether he asked what's that there what's that bulge so at at 4003 so you don't see that an officer being on both sides of mr bryant car in front of him skate behind him not leaving him any space to walk one way or the other without running into his officer or him believing he's confined when you got two officers around you and i i i i'm glad that your honor asked that question um the district court's findings on that point uh which are at ja 168 that's page 111 of the may 21st transcript um are that mr bryant can be i'm quoting can be seen turning his head away from officer benitez who was approaching at 1939 59 and looking toward the back of the white suv where officer smith was beginning to round the corner uh at that and i think this is the key language from the court's finding at that point bryant turned his head to look at officer smith excuse me at the point officer bro i apologize at the point bryant turns his head to look at officer smith officer benitez was still walking along the road and i think if the court looks at the body camera which the district court um judge indicated she reviewed several times in conjunction with officers uh officer smith's credited testimony um no she made this finding that officer benitez i would argue was still in the road i think that's the the point that she was making there was that perhaps mr bryant knew that the officers were coming in his general direction as did anybody else on the sidewalk but what the body worn camera from both officers shows is that the officers were walking in the street they were not walking on the sidewalk it's not as though they were walking up the sidewalk together and then officer smith for they both were coming up the street and so the way that the district court viewed the body worn camera at the moment that officer smith was coming around the back of the suv officer benitez it appeared to the court was still in the street and that's what mr bryant would have seen that he was still in the street not that he had come up onto the sidewalk um two two blocks but he's to his left you know you still got two officers on either side i just wonder how much of a difference of a fact that makes if you still see an officer to your other side about if you walk that direction you're walking past an officer so you don't you know would he feel confined that he could not just walk away from that officer well and i think that this court's uh case law and from the supreme court asked us to consider the you know a reasonable innocent person um like anybody else who was on the sidewalk you know the officers at that point they had not spoken to mr bryant he didn't have reason to think um until officer smith asked a question specific to him you know about what's that bulge there he didn't have reason to think that the officers were coming to speak to him as opposed to you know if there was another man standing at the front of the black excuse me the back i believe of the black car that was parked by the suv um he wouldn't have known until they began speaking to him asking him specifically about the bulge whether they were coming to talk to him or to the woman who was standing in the open door of the suv um and and so i do think that while looking at the body worn camera and and listening to excuse me reading transcripts um we do or rather that this court should um bear in mind it's um the standard of review with respect to this actual finding that unless the the district court clearly aired um unless in other words i feel like you're cabining in um whether benitez was in the street should we be looking at this from the perception of the mr bryant did he reasonably person believe he could leave because you're you're you're telling me from the officer's view of where things stood but with a reasonable person in that circumstance believe they could just walk past both police officer i think based on the factual findings yes because the finding is that at the crucial second when officer smith is coming around the back and when mr bryant has begun to turn his head he was still looking away from officer benitez he wasn't on the sidewalk so the sidewalk in other words was still open for him to walk by and walk in there that's my question is do you think you could walk past this police officer if one is coming around surrounding you like would the reasonable person think that they were zoning in on him and i as i i don't i think that that a person would think that they could walk away if you have an officer on one side eight to ten feet is the district court's finding coming around the one side and the other officer according to the finding has not yet come onto the sidewalk and what we have instead is the officer officer benitez has been walking up the road that's what i what i understand the district court's finding to be and at that point again it wouldn't be clear it would become clear some you know mere seconds later but at that point i don't think that it was clear that he mr bryant was the focus of both officers attention so let's suppose the facts were this that mr bryant didn't stop at the white suv he kept walking slowly up sidewalk so that when officer smith at the 19 hour 40 minute and zero second mark when officer smith is stepping onto the sidewalk bryant is a little bit past him on the sidewalk because he continued walking and at that very second he says you stop and turn around and bryant stops and turns around at that moment as bryant sees i i think um in that scenario the officer has given a command um you know potentially to to mr bryant that he specifically said that he just stopped and that he wants to talk to him and so it's i i think that so yes he sees that that right because of the the words that have been used so so at at zero seconds 1940 and zero seconds in in this hypo he says stop and turn around and bryant does that so that at three seconds later at 1940 and three seconds when bryant turns around he says what's that bulge and recovers a weapon so he had reasonable suspicion when he sees the bulge but let's say he didn't at the time he said stop and turn around we would suppress that gun wouldn't we even though it was only a three second long unconstitutional detention the fact of the matter is that he had been seized unconstitutionally so we would suppress that gun under our precedent wouldn't we this hypo on on this hypo if the facts are otherwise the same aside from the fact that officer smith is slightly behind mr bryant uh i've they're the same as this case we've of course argued um that we disagree with the district court's conclusion that the officers did not have reasonable articulable suspicion as before the officer came around the back of the suv so if the facts are otherwise the same i would agree with the court there's been a seizure by way of a command to stop and a submission to the show of authority but would disagree that suppression is required so in other words um your honor i think that the timing is certainly important but the there is a significant difference in terms of the way that that encounter it was a fast encounter in the hypothetical it is a fast encounter but i think that it's substantially um different what's that reasonable articulation the as a pin you down you said because you said it's before smith encounters correct certainly so it's again if the facts in judge wilkins hypo are otherwise the same as the facts of this case what we have is the officers um coming into a high crime area um which i would note um although that that is being disputed on appeal that they're at least in one place that the record ja 51 which is at one of the um the pleadings in the district court it seems that mr bryant conceded that this was a high crime area um but certainly we've argued that that alone does not but putting that certainly certainly but but would provide context um and certainly according to officer smith's testimony is why the officers were patrolling in this particular area um so they're driving up into the um the horseshoe they hear somebody call out 12 or someone or someone's call out 12 which they heard that no but the standard um at this point is uh reasonable articulable suspicion so far less than preponderance of evidence right um less than probable cause and so circumstantially officers could hear that from inside a vehicle that's moving presumably somebody standing on the sidewalk would have heard it as well um to have that and then um officer smith testifies that mr bryant looks over his shoulder and that doesn't give you no certainly i'm just trying to think of myself walking down this street as well like i turn my shoulder because i see an officer i'm going to do that but does that mean i um you know that we should assume i've committed a crime if i pull up you know straighten up my jacket or do whatever does that mean that that's enough for officers to come ask me anything um i think i don't think his officers assumed that he had or committed a crime but they suspected that they had because in addition to the factors i've already noted okay but you've given me a crime area you've given me looking over my shoulder i would do that if it wasn't an officer there's somebody walking down the street and i'm my backs turned to them and and i just straighten up my clothes i mean those are your three facts so far is there anything else yes and as mr bryant begins to walk away he makes a security adjustment in this officer and that's all in the straightening up my clothes can i just do that i i would think um your honor that it would depend certainly anybody could could move their clothes around or or move um you know objects on their person around but what makes there's no ballgame at that time correct at that time correct but what makes mr bryant's conduct at this point notable to the officer is that in his training and experience that particular movement that particular adjustment is often associated with checking for you know to make sure that a firearm is still there i've been looking for my phone that i had in my pocket to make sure it didn't fall out certainly um but the court precedent does not require that every innocent explanation be dispensed with before an officer develop have enough to develop reasonable articulable suspicion at least to walk up and ask a question certainly without having seen the bulge you know and uh we're not necessarily in territory of putting hands on anybody walking down the street i'm in that high crime area going to the corner store i turn around because i see somebody whether it's officer or not they could be in plain clothes it could just be anybody i'm just making sure i check where i am i'm looking at my surroundings and then i'm straightening up my clothes because i think my cell phone's about to fall out those three things can let an officer approach me i i think that as as your honor has described it i mean our argument would be that the uh it's a fair inference that mr bryant knew that these were police officers which is different from just hearing a random person make any sort of statement that would cause a person to you know turn their head okay but then you're adding the element that he knew they were police officers then wouldn't that institute that there was a show of authority there was police presence and so then he thinks that he's confined and he cannot move no not on his own um otherwise anytime the police were you know just driving down the street or walking down a sidewalk anybody who perceived the police to be in the area would be seized um and it's it's not it's a combination of all of these factors that leads to we would argue reasonable suspicion that he was armed um but i but i'm describing that as to myself and i'm just not seeing a why is mr bryant different if i just described that about myself those same things high crime area looking over shoulder me adjusting my clothes why is mr bryant different at this point in time and you're and and there are the additional factors somebody has alerted the police to police presence and he's making it there but it doesn't matter to me i didn't do anything and your honor i would um i would just point the court to um i want to say that ja 72 or 73 the first time that um let me double check that i'm not telling the court the wrong citation but when when um officer smith describes that might be the wrong notation i apologize one moment your honor it's a j 75 um where um officer smith describes the security check which again it's not just adjusting clothes um it's a specific movement and he was cross-examined on this um and he he was very forthcoming in telling the district court judge it could have been an adjustment of mr bryant's body but again the officers are not required to dispel every innocent explanation for conduct i guess what's striking about this and judge child's questions certainly um highlighted and judge wilkins has written on this before so i'm sure you're familiar with what the underlying concern is i mean the entire washington metropolitan region is a high crime area it comes all over the place and the city isn't able to regulate but what does the city do and i was struck how the city is doing basically what it did in the 60s in the war on drugs but it's trained its officers well so they don't do some things and some of the cases and the officers have been instructed but the problem isn't it that i mean i don't know it was striking the police knew nothing about this man they hadn't seen him do anything illegal he it's not like in the war on drugs where they either saw an exchange of drugs or exchange of money he's just there with other people and their children there and as judge child's hypothetical suggests you know you see an officer you see them moving quickly you look around so the argument that the government i thought was going to make in part was look all those circumstances i've just mentioned high crime area can't regulate what do you do the notion of when articulable suspicion arises moves forward if i could put it that way you know in paris the men were under observation casing the store right they don't have anything like that here other than mr bryant is walking on the street at 7 30 in the evening and the police jump out and he looks around so surely the government is going to emphasize high crime area lots of shootings in the recent weeks and officer smith testified about that and so as judge wilkins questions to defense council appellants council suggested um the police have to take care for their own safety so they approach front and back and they want to ask bryant some questions and so that's just life in the big city no unconstitutional seizure i mean doesn't the government want to use all these factors and the shortness of time and the inherent danger of the situation to argue its case as opposed to joining the appellant in trying to separate out all these incidents i mean but you seem to be joining appellants tactics if i may judge rogers um i i certainly appreciate the um your question um i think in discussing the are the reasonable articulable suspicion factors that that was in response to what began as judge wilkins hypothetical about whether had officer smith been in on the other side or had excuse me mr bryant been on the other side of officer smith whether that would have required suppression of the gun which is why i you know then turned to the government's reasonable articulable suspicion argument i'm pushing you more on how is the court to view the legal standards in a changed environment both legally and socially uh do we relax those standards and that's what i hear being argued not specifically but implicitly i don't think that the government is are we're certainly not arguing that the court should relax the legal standards that it uses to evaluate um terry stops or other um other fourth amendment scenarios um what we're arguing in this case a primary argument in this case to come back to where i started is that based on the district court's factual findings based on this record which we would argue are permissible findings uh mr bryant would have felt free to leave the encounter or to ignore the encounter with the officers at the moment where uh appellant counsel has fixed to the point of seizure and we are arguing further that the point of seizure was later at uh 1940 03 um or when officer smith asked mr bryant what's that what's that bulge right there with the understanding that when he asked that question he had seen a bulge that he and his training and experience uh believed was consistent with a firearm and so we're saying that that's point of seizure and so to me that is relaxing the standards because there's nothing specific i thought that's what just childless questions were getting at nothing specific as to brian that's indicative of anything other than how a person innocent of any crime would react sees officers stop park their car get out of the car they're not running but they're also not walking slowly and they're headed toward him um i'm just trying to understand uh both from the police point of view that they're trying to safety and this balance in this changed legal environment given that communities can't regulate guns and efforts to do so have been struck down repeatedly by the supreme court so are we at a point where essentially and the supreme court ultimately will tell us but as a lower court we're dealing with the standards that are out there but i just wondered if the government had any view and you reject that entirely but you do move the point of seizure back that's all you require more that's all i'm getting at and the defendant pellet wants far less i i suppose it by by require more your honor you are i take your your point there to be that it's that that the government's position is that a seizure requires more than what happened by 39 your argument you're saying it wasn't until the officer said to bryant what's that that he was seized the appellant is arguing oh no he sees a lot earlier than that when these officers are coming around the car and in front and and back of it yes and and your honor that the reason i think there's there's sort of two um not having observed him to do him specifically to do anything on uh illegal and i think on the officer's experience yeah i i think that that that's part of why i keep coming back to the district court's factual finding about um what a reasonable person would have seen and would have understood to be going on but the district also puts as a factual finding that bryant put himself in that position yeah i'm being there so is that not error if you look at the video cam to see officers at both sides i mean again well i i think um i'm sorry i didn't need to interrupt no no i think that what the district court meant by that point is that you know mr bryant uh moved away from the black car and walked up the sidewalk um to behind the suv where he's sort of out of sight of the officers at that and then he stopped um i don't think that the court was implying that he um that he did anything other than he stood in a place where it was possible for police to come at him from from different sides and the other thing i want to ask you about is you all characterize this as a consensual encounter what part of that is consensual by mr bryant the by citing two cases saying that when there's a consensual encounter and i'm assuming that when an officer hey do you mind if i ask you a couple questions then that can be consensual if they say yes so what part of this here under these factors consensual certainly an officer can say do you mind if i ask you a couple of questions this court has also said in united states versus growth there's a question even can i see your waistband it does not rise to the level of a seizure but i'm asking you when you say is that a gun is that consensual by that point when the when officer smith has asked what's that what's that bulge right there i mean that's part of why we're saying that's a seizure before that the questions that was asked um we don't have any guns on you you're saying that that's consensual but that's closer to the questioning in cases where this court has said that based on the question that it's not a seizure okay and i have a different question i didn't say seizure i say is that a consensual that's how it's being characterized yes and i mean this is this is a to the as we've been discussing all morning it's a very fast-moving situation so it's possible certainly that um i just in a different scope of no i don't perceive as consensual encounter by the police i i think that asking permission to ask a question is consensual if you say yes i i think asking the the hard question is that consensual under this this court's case law yes i think that it is okay fair enough and then you all indicated it was a citizen encounter what what do you mean by that this i just think the police are speaking with a person on you know out in the community i think it is the way that i would probably sort of person is not a police encounter oh i i think that that's that's just um the phraseology that you know we've used in our brain and that the uh yes it's from the perspective of the police certainly from the perspective of the citizen if a citizen it would be a police encounter but the fact that it's a police encounter does not in and of itself make it a non-consensual encounter um and just to go back i was trying to to respond and uh to to the court it's possible that the officers could have asked officer smith could have asked uh do you have any guns on you mr brian could have said no and then the officer never saw a bulge and then everyone would have gone about their day or their evening in this case um and and i i think it's that crucial second or two seconds in between where it morphs from a consensual encounter to a seizure because at the same time that mr smith is excuse me mr bryant is sort of being he's aware now that there are officers on both sides of him that's the same time that officer smith sees the bulge and one last question for you obviously uh lower courts can um opine on credibility but you have here at least that for the district court in terms of um him having this approach and he him being under investigation do you know what the district court knew or is that something that's kind of after the fact my understanding is that it's after the fact um just based on but but i but i can't speak to that definitively you know i was not the um the district court ausa on this case and i don't have you know the dates of when all of this is happening um to mind certainly i would expect that um what was the date of the article in the washington uh in the record we can look it up i believe i think it might even be in uh the court will just brief indulgence um at least but i don't know about in in the record per se but i can uh point the court just um now i'm happy to follow up with a letter to the court if that would be useful but would note that um in um palace council brief that they cite 2023 as the date of the article um that you know raises this issue for the court so that's certainly well article was at least available publicly july published july 14th 2023 and yes your honor and the suppression hearing in this case took place on may 5th of 2021 so um you know i believe it did relate to alleged conduct happened within the time frame that this case was was um presented but um that's not something that the district court took into account because it was not um it was not before the court is my understanding what was not before the court the the fact of the investigation that is reported in that the article that we were just discussing oh and i'm not sure that the investigation had even begun but again i'm speaking um based on my post-talk sort of off-the-cuff understanding because it's that that's not it's my understanding that was not before the court at the time of this hearing so what the government knew i'm not i'm not sure the answer to that i wouldn't imagine that i mean certainly the government has uh obligations with respect to disclosures under various rules and case law um i really cannot speak to anything outside of the record of this case um in terms of what was disclosed or what was known by the government i honestly just do not know um but again happy to um follow up with the court um in a letter if that would be useful so just to get down to what i would consider to be brass tacks here the appellant's argument seems to be that at 1940 and zero seconds when officer smith is stepping onto the sidewalk that the seizure occurs in that there's no reasonable articulable suspicion at that moment let's suppose the court agrees that there's no reasonable articulable suspicion at 1940 and zero seconds and that the reasonable articulable suspicion doesn't arise until three seconds later 1940 and three seconds when the officer seems to have clearly observed bulge because he asked the question if we believe that the seizure as appellant would have us argued some occurred at the zero second mark at 1940 um why isn't this case exactly like my hypothetical where the alternative facts or alternative scenario where brian didn't stop at the white suv he kept walking and so at 1940 and zero seconds officer smith says to brian who's walking away from him stop and turn around and he turns around and at the three second mark he sees the bulge and then grabs him if we believe that there's no reasonable articulable suspicion at 1940 in my hypothetical where brian kept walking instead of stopping at the suv we would suppress that weapon under our case law because there would have been a submission to a authority so there would have been a seizure before there was reasonable articulable suspicion and it wouldn't matter to us that he obtained reasonable articulable suspicion just three seconds late wouldn't matter to us so on our facts here if indeed he was if if if the district court found or should have found that he was seized at 1940 in zero seconds and if we agree that there's no reasonable articulable suspicion at that point because all he has said is do you you don't have any guns on you and he hasn't seen the bulge yet then why should there be a different result here why wouldn't we suppress that weapon i think there needs to be reasonable articulable suspicion to support a seizure um that that is a the only the only thing i can think of in both scenarios your honor is that going you know splicing what happened second by second in these encounters where they're there are safety concerns um for the officers and for the people around would um for lack of a better word hamstring law enforcement but aside from that practical consideration it can and and without a reason to not exclude evidence that's obtained and you know certainly we don't have we don't have an intervening circumstance in this case or under the the hypotheticals the court has given um you know without reasonable articulable suspicion um i think the cases are this case would be harder than the than the hypothetical that the court gave about um where there's very clearly somebody who said the officer said stop and there's been a submission to that to that command to stop but they are much closer than what we have here any other questions judge childs or judge rogers no no thank you thank you miss roland i believe you were out of time we'll give you two minutes but thank you thank you i just wanted to address a few points one is that regarding this timing what a reasonable person would have perceived when smith came around the corner and questioned him really isn't linked to when officer smith gained reasonable suspicion so i mean those are two different questions for the court when was he seized when was there reasonable suspicion and the fact that there were was very little time between them or a lot of time between them really isn't relevant well i don't see how you got an argument that read that he seized before the 1940 and zero second mark oh no no because you didn't make that argument and i don't think that's right what i'm saying is at that moment um 1940 zero zero that's the moment that mr bryant or a reasonable person in his circumstance would have perceived uh a show of authority the fact that officer smith gained his reasonable suspicion three seconds later 10 seconds later two minutes later it just isn't the two things are not linked well they're linked if smith observes because he steps onto the sidewalk and that enables him to and so i'm going to ask you the brass tacks question okay um you know i look at page 18 of your brief i think it is got a picture well it's page 10 of your brief so you've got a screenshot the second screenshot it's 1939 and 59 seconds smith isn't on the sidewalk yet it looks like he's a couple steps away from the sidewalk so at best he gets to the sidewalk at zero seconds yes it's going to take him another second or so to get up onto the sidewalk to quote unquote block mr bryant's egress so so here's my brass tacks question if i believe that he's not really blocking him until at least the 1940 01 or 02 point and at that point he's seeing the bulge don't you lose because essentially the seizure is simultaneous with him obtaining reasonable articulable suspicion because you can see that when he sees the bridge he has reasonable articulable suspicion yes he does but they but they aren't simultaneous there's enough time for officer smith to ask two questions and to get at least one answer well we know when the questions were asked because we can see that right camera right and the third question is at 1403 right and the first question finds that he's raising his hand between the 1401 mark and the hand as if the point towards the way span or to communicate hold on here well maybe maybe not but the district court we have to under or needless from the supreme court we have to give due weight to the inferences from the factual findings of the district court i'm not sure what that means it's not clear error you know it's not abuse of discretion it's due weight but her inference from the fact of him raising his left hand is that he's fixated on his waistband and that's what these officers are trained to do gun interdiction where do people hide the guns in their waist so that would be the first place he would look when he had an opportunity to when he clears the suv he looks right at the waistband raises his hand and that's at like the one second mark so he sees it then right as he is blocking the sidewalk well so the three things happen at the same time judge they don't happen at the same time his second question would not have been did you step off if he had seen a bulge it was only after that question that he saw a bulge and then said what's that if he had seen a bulge why would he go from you don't have any guns do you to like just step off no he would zero right down with that bulge let me see that bulge so there there was time between when mr bryant was seized and when the officer uh believed that he saw a bulge and which gave him reasonable suspicion and the fact that the time is so short i i don't think really makes any difference um if if the court finds that you know one or two seconds or three or a short amount of time five seconds ten seconds between seizure and reasonable suspicion doesn't matter because they're all very short even five seconds is short then that's not what i'm saying my hypothetical or but what my question to you is if if isn't it a fair inference from the facts that the officer sees the bulge it was simultaneous at the at the moment that the officer essentially completes stepping up onto the sidewalk that is not a reasonable inference for the from the evidence and uh for one reason that i just gave that he wouldn't have continued to question he wouldn't have asked oh were you trying to evade the police if he had seen a bulge that doesn't matter anymore now we've got reasonable suspicion because i see you're acting as if like a long period of time took place well if he it's three seconds it's don't have any guns on you stepped off what's that if he had perceived literally literally about that quickly but if he had seen the bulge he wouldn't have asked after why would he ask that question okay he would have gone at the moment he says stepped off let's say he didn't he still doesn't he didn't see it that's 14 1940 in one second and then there's a seizure there's a seizure and then at three seconds 40 and three seconds he gains reasonable suspicion i mean the fact that those are so close that these are so we're going to we're going to you know scrutinize this like you know nfl instant replay or something by looking at the cameras the different angles and taking a frame by frame well when you're saying ah this frame he sees and so he doesn't get reasonable suspicion to you know the frame exactly i mean the reason that we have body-worn camera one reason is so that we can see exactly the timeline exactly what things are happening and it's not uh outlandish at all for the court to you know look at that court makes the finding i guess what i'm getting at here is that if we're to give due weight to the inferences from the district court's factual findings we review the factual findings for clear air we do wait to the inferences that the district court makes from the factual findings now we review de novo whether there was a seizure and whether there was reasonable suspicion but if the district court makes the finding based on the testimony which we didn't see in reviewing the body-worn camera etc that really the blocking doesn't happen until the 1940 and three second mark how do we overturn that um because if the court can look at the video camera the footage themselves itself and see what happened at 40 and zero seconds how is that giving due weight to the district court's findings the district court well to the extent the district court found that he wasn't seized at 40 and zero seconds we're arguing that that's clear error and whenever the bulge smith saw the bulge it was after that whether it was oh one oh two oh three it was after that and something happened in between that which is he asked completely unrelated questions okay um judge rogers anything else that's child thank you all right we have your argument we'll take the case under revised thank you
judges: Wilkins, Childs, Rogers